E-filing

1   MANATT, PHELPS & PHILLIPS, LLP
    JOHN P. KERN (Bar No. CA 206001)
2   E-mail: JKern@Manatt.com
    111 Sutter Street, Suite 700
3   San Francisco, CA 94104
    Telephone: (415) 291-7400
4   Facsimile: (415) 291-7474

5   BALLARD, SPAHR, ANDREWS & INGERSOLL, LLP
    Douglas Y. Christian, Esquire (Pro Hac App Pending)
6   ChristianD@BallardSpahr.com
    Marc J. Weinstein, Esquire (Pro Hac App Pending)
7   WeinsteinM@Ballardspahr.com
    1735 Market Street, 51st Floor
8   Philadelphia, PA 19103-7599
    (215) 665-8500
9   (215) 864-8999

10  Attorneys for Plaintiff
    MUTUAL HOLDINGS (BERMUDA) LIMITED

11

12                      UNITED STATES DISTRICT COURT

13                         NORTHERN DISTRICT

14                            Oakland Division

15

16  MUTUAL HOLDINGS (BERMUDA)              Case No. C07-04505
    LIMITED,
17                                          COMPLAINT FOR MONEY JUDGMENT
                  Plaintiff,                AND ORDER RECOGNIZING
18                                          CONCLUSIVENESS AND
            vs.                             ENFORCEABILITY OF FOREIGN
19                                          COUNTRY MONEY JUDGMENT
    SINCLAIR-DWYER & COMPANY,
20  INC.,

21                Defendant.

22

23       Plaintiff Mutual Holdings (Bermuda) Limited ("Mutual Holdings"), by its attorneys,

24  Manatt Phelps & Phillips, LLP and Ballard Spahr Andrews & Ingersoll, LLP, for its complaint

25  against Defendant Sinclair-Dwyer & Company, Inc. ("Defendant" or "Sinclair-Dwyer"), alleges

26  as follows:

27

28

**JURISDICTION**

1.    This is an action for money judgment and an order recognizing the conclusiveness and enforceability of a foreign country money judgment under Cal. Civ. Proc. Code. §§ 1713, *et seq*, and under principles of international comity.

2.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1332(a)(2), because the amount in controversy exceeds $75,000, exclusive of post-judgment interest and costs, and because there is diversity of citizenship between the parties.

**INTRADISTRICT ASSIGNMENT**

3.    Assignment of this action to the Oakland Division of this Court is appropriate because: (1) Defendant has its principal place of business in San Leandro, California, and (2) a substantial part of the events or omissions giving rise to the claims occurred in Alameda County.

**VENUE AND PARTIES**

4.    Plaintiff Mutual Holdings is a Bermuda company with its principal place of business in Hamilton, Bermuda.

5.    Defendant Sinclair Dwyer is, and at all times herein mentioned was, an insurance agency duly organized and incorporated in California, with its principal place of business at 15890 Foothill Boulevard, San Leandro, California 94578.

6.    Venue is proper in this district under 28 U.S.C. § 1391(a)(1), because Sinclair Dwyer resides in the Northern District of California, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

**FACTUAL BACKGROUND**

7.    On April 2, 2007, following a trial on the merits, the Supreme Court of Bermuda, Commercial Division, entered a money judgment in favor of Mutual Holdings against Sinclair Dwyer in the amount of $2,575,105 plus Mutual Holdings' costs of the action. *See* Judgment attached hereto as **Exhibit A**.

8.    The matter in the Supreme Court of Bermuda arose out of Sinclair Dwyer's failure to indemnify Mutual Holdings from reinsurance underwriting losses as required under its shareholder agreements with Mutual Holdings.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

COMPLAINT

9.      As of the date of filing of this Complaint, Sinclair Dwyer has not satisfied the Judgment entered by the Supreme Court of Bermuda ("Bermuda Judgment").

10.     Mutual Holdings seeks an order pursuant to California's Uniform Foreign Money-Judgment Recognition Act ("UFMJRA"), California Code of Civil Procedure §§ 1713, *et seq.*, recognizing and enforcing the Bermuda Judgment and entering judgment in the dollar amount of the Bermuda Judgment along with post-judgment interest, costs, and fees. Additionally and in the alternative, Mutual Holdings seeks an order recognizing and enforcing the Bermuda Judgment according to general principles of international comity.

**General Description of the Insurance Profit Centre Program**

11.     Mutual Risk Management Limited is a holding company that owns Mutual Holdings and other on-shore companies including Legion Insurance Company ("Legion"). Mutual Holdings in turn owns Mutual Indemnity (Bermuda) Limited ("Mutual Indemnity"), both of which are offshore companies.

12.     Mutual Holdings was one of the companies involved in a "rent-a-captive program" marketed under the product name "Insurance Profit Centre" ("IPC").

13.     Many small to medium sized US companies sought workers compensation coverage in the alternative insurance markets starting in the early 1990's, because premiums became prohibitively expensive in the traditional insurance market. The IPC program allowed such companies to participate in the profit or loss of its workers compensation program by the client managing its more frequent but less severe losses which could be predicted year after year. So long as the company participating in the IPC program managed its risks well, it benefited from reduced premiums, underwriting profit sharing, and investment income. However, IPC clients were required to indemnify the offshore reinsurance underwriter to cover underwriting losses exceeding an agreed upon threshold. IPC clients were also required at the outset of the program and as required thereafter to provide the offshore reinsurance underwriter with cash and/or a letter of credit as collateral to cover underwriting losses.

14.     The IPC program also appealed to insurance agencies looking to profit on the underwriting of policies it sold. For agency business, Legion issued insurance policies to the

1  underlying insureds, Legion ceded the risks to the IPC reinsurer, and the IPC agency client

2  indemnified the IPC reinsurer and/or its holding company against losses on the program in

3  exchange for receiving any underwriting profits.

4       15.    Mutual Holdings required all of its IPC clients to enter and abide by shareholder

5  agreements.  The shareholder agreements governed the terms of the IPC client's underwriting

6  risks, indemnity liabilities and profit share.

7       16.    Under Mutual Holdings' IPC program, if Mutual Indemnity made an underwriting

8  profit from reinsurance ceded under the program, it would pay those profits by way of dividends

9  to its parent, Mutual Holdings.  Mutual Holdings would distribute profits to its shareholders

10  pursuant to their shareholder agreements.  If Mutual Indemnity suffered an underwriting loss, the

11  IPC client, having taken on the risk, was responsible for indemnifying Mutual Holdings/Mutual

12  Indemnity.

13  **Sinclair Dwyer's Participation in the IPC Programs as a Client and Shareholder**

14       17.    Sinclair Dwyer is a California insurance agency that wished to participate in the

15  underwriting profitability of the risks of its workers compensation insurance customers.  It was

16  authorized by Legion to act as its broker in obtaining workers compensation business from

17  Sinclair's customers.  Mutual Indemnity provided a rent-a-captive reinsurance facility for this

18  business, under which Legion reinsured this workers compensation business with Mutual

19  Indemnity.

20       18.    In or about January 1999, Sinclair Dwyer entered into an IPC program provided by

21  Mutual Holdings and Mutual Indemnity.  In or about January 2001, Sinclair Dwyer subdivided

22  that initial program into three new IPC programs provided by Mutual Holdings and Mutual

23  Indemnity.

24       19.    Each of the four IPC programs, designated D37, E37, F37 and K33 respectively,

25  had its own shareholder agreement.  Each shareholder agreement contained the following

26  indemnification language:

27         3(A) Shareholder hereby indemnifies and hold Mutual and Indemnity harmless
       against the cumulative sum of paragraphs 2(A), 2(B) and 2(C) minus the
28         cumulative amount of dividends paid, being less than zero at any point in time.  On

receipt of each written demand by Mutual or Indemnity, Shareholder agrees to pay Mutual or Indemnity within 30 days, the amount by which the cumulative sum of the amounts calculated under paragraphs 2(A), 2(B) and 2(C) minus the cumulative amount of dividends paid pursuant to this agreement, are less than zero minus all previous payments under this paragraph provided however that the definition of incurred losses and loss expenses in paragraph 2(C) shall for this purpose only include losses and loss expenses which have been paid or are likely to be paid within the following ninety (90) days.

20.    Sinclair Dwyer's indemnity exposure was equal to the difference between the loss fund (the gross premiums paid less expenses) and the aggregate attachment point ("AAP") which was calculated by reference to gross written premiums. The difference between the loss fund and the AAP was known as the "gap."

21.    The insurance business provided by Sinclair Dwyer was unprofitable and generated losses under the IPC programs.

22.    The losses on all of Sinclair Dwyer's IPC programs exceeded the AAP in each program year. Sinclair Dwyer was thus liable to "fund the gap" to indemnify Mutual Holdings for the losses. While the gap was partly covered by collateral provided by Sinclair Dwyer plus investment income, the collateral and investment income earned were insufficient to satisfy Sinclair Dwyer's liability to Mutual Holdings.

23.    Sinclair Dwyer refused to indemnify Mutual Holdings.

## PROCEDURAL HISTORY OF THE BERMUDA ACTION

24.    On February 1, 2006, Mutual Holdings filed a Writ of Summons (the English legal system's equivalent of a complaint in US practice) against Sinclair Dwyer in the Supreme Court of Bermuda, Civil Jurisdiction 2006 No. 33, seeking indemnification under the shareholder agreements. Mutual Holdings sought $2,441,088 plus interest, constituting the losses under the four IPC programs. *See* Writ of Summons attached hereto as **Exhibit B**.

25.    Bermuda law firm Wakefield Quinn entered its appearance on behalf of Sinclair Dwyer. On April 10, 2006, Wakefield Quinn filed Sinclair Dwyer's "Statement of Defence" (the English equivalent of an answer in US practice) wherein it denied liability and posited that it was fraudulently induced to enter the shareholder agreements with Mutual Holdings. *See* Statement of Defence attached hereto as **Exhibit C**.

26.    Following the Bermuda Court's striking of various paragraphs of the Statement of Defence, the only issues which Mutual Holdings was required to prove at trial were that: (1) it suffered losses; and (2) Sinclair Dwyer was obliged to indemnify Mutual Holdings for those losses.

27.    In support of its indemnity claim, Mutual Holdings filed the Witness Statement of David Alexander, Vice President and Director of Mutual Holdings and President and Director of Mutual Indemnity.

28.    In its defense, Sinclair Dwyer filed the Witness Statement of its President and CEO, Mr. Michael Dwyer.

29.    Wakefield Quinn defended the case on behalf of Sinclair Dwyer until March 15, 2007, two weeks before the scheduled trial, when the firm withdrew its appearance before the Bermuda Court.  Since that time, no other attorney has entered an appearance in the Supreme Court of Bermuda on behalf of Sinclair Dwyer.

30.    On April 2, 2007, the Supreme Court of Bermuda held a bench trial where Mutual Holdings was required to present evidence and arguments to the Court in support of its indemnity claim.  No person or attorney appeared at the trial on behalf of Sinclair Dwyer despite proper notice.  No person or attorney on behalf of Sinclair Dwyer made any effort to continue the trial or enjoin the Court from holding the trial.

31.    At the trial, Vice-President and Director of Mutual Holdings David Alexander testified on behalf of Mutual Holdings.  Mutual Holdings also admitted in evidence all the relevant documents in support of its claim.

32.    At the conclusion of the trial, upon considering the testimony and documentary evidence presented, the Court entered judgment for Mutual Holdings and ordered Sinclair Dwyer to pay Mutual Holdings $2,575,105 (comprising $2,004,764 and $570,341 contractual interest at 8% from September 12, 2003).  The Court also ordered Sinclair Dwyer to pay Mutual Holdings its costs of the action, assessed by the Court on May 30, 2007 at $43,964.25.  *See* Registrar's Taxation of Bill of Costs attached hereto as **Exhibit D**.

33.      On April 27, 2007, counsel for Mutual Holdings sent a letter to Sinclair Dwyer President and CEO Mr. Michael Dwyer along with a copy of the Bermuda Judgment and Bill of Costs. Counsel for Mutual Holdings requested that Mr. Dwyer contact him by the close of business on Friday May 4, 2007 to arrange for prompt payment of the Bermuda Judgment and Bill of Costs relating thereto. *See* April 27, 2007 Letter (without enclosures) attached hereto as Exhibit E.

34.      Sinclair Dwyer has not responded to the April 27th Letter, nor has it paid the Bermuda Judgment or Bill of Costs.

35.      Sinclair Dwyer has not appealed or challenged the Bermuda Judgment in any manner.

### FIRST CLAIM FOR RELIEF:

### RECOGNITION AND ENFORCEMENT
### PURSUANT TO THE UNIFORM FOREIGN-MONEY JUDGMENT ACT
### (Cal. Civ. Proc. Code. §§ 1713, *et seq.*)

36.      Mutual Holdings hereby incorporates paragraphs 1 through 35 above as though fully set forth herein.

37.      The Bermuda Judgment was duly entered in Bermuda, a foreign state, and it is enforceable in California pursuant to the Uniform Foreign Money-Judgments Recognition Act ("UFMJRA"). Cal. Civ. Proc. Code. §§ 1713, *et seq.*

38.      The Bermuda Judgment is a "foreign judgment" that is final and conclusive and enforceable under the laws of Bermuda, the jurisdiction where it was rendered. Cal. Civ. Proc. Code. § 1713.2.

39.      The Bermuda Judgment was rendered under a system which provides impartial tribunals and procedures compatible with the requirements of due process of law. Cal. Civ. Proc. Code. § 1713.4(a)(1).

40.      The Supreme Court of Bermuda had personal jurisdiction over Sinclair Dwyer because Sinclair Dwyer voluntarily appeared in the proceedings. Cal. Civ. Proc. Code. § 1713.5(a)(2).

41.     None of the discretionary grounds for denying recognition of a foreign judgment are applicable to the recognition of the Bermuda Judgment. Cal. Civ. Proc. Code. § 1713.4(b).

42.     In light of the foregoing, the Bermuda Judgment is conclusive between Mutual Holdings and Sinclair Dwyer pursuant to Section 1713.3 of the UFMJRA and is enforceable in California in the same manner a judgment rendered in a sister state.

## SECOND CLAIM FOR RELIEF:

## RECOGNITION AND ENFORCEMENT
## PURSUANT TO PRINCIPLES OF INTERNATIONAL COMITY

43.     Mutual Holdings hereby incorporates paragraphs 1 through 42 above as though fully set forth herein.

44.     Courts of the State of California have the authority to recognize foreign judgments even in circumstances where the judgments are not covered by the UFMJRA. Cal. Civ. Proc. Code. § 1713.7.

45.     The Bermuda Judgment is entitled to full recognition and enforcement pursuant to the UFMJRA as well as to traditional principles of international comity as understood and applied by the courts of the United States of America and the State of California.

## PRAYER FOR RELIEF

WHEREFORE, Mutual Holdings prays for judgment as follows:

A.     Recognizing and enforcing the Bermuda Judgment against Sinclair Dwyer in the amount of U.S. $2,575,105.00 plus interest thereon from April 2, 2007.

B.     Directing that Mutual Holdings be awarded costs and disbursements of both the Bermuda action and this action, and granting Mutual Holdings such further relief as the Court may deem proper.

C.     For an order declaring the Bermuda Judgment entitled to recognition under the UFMJRA, conclusive between Mutual Holdings and Sinclair Dwyer and entitled to enforcement in the State of California and the United States of America.

D.     For an order declaring the Bermuda Judgment entitled to recognition under principles of international comity, conclusive between Mutual Holdings and Sinclair Dwyer, and

1    entitled to enforcement in the State of California and the United States of America.

2         E.      For such other and further relief as the court may deem just and proper.

3                                    Respectfully submitted:

4    Dated:   August _30_ , 2007        MANATT, PHELPS & PHILLIPS, LLP

5

6                                    By: _____
7                                        John P. Kern
                                         *Attorneys for Plaintiff*
8                                        MUTUAL HOLDINGS (BERMUDA) LIMITED

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

                                            9                              COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues triable by a jury.

Dated:    August 30, 2007            MANATT, PHELPS & PHILLIPS, LLP


By: _____
    John P. Kern
    *Attorneys for Plaintiff*
    MUTUAL HOLDINGS (BERMUDA) LIMITED

90000189.1