IN THE SUPREME COURT OF BERMUDA
CIVIL JURISDICTION
2006 : No. 33

BETWEEN:

MUTUAL HOLDINGS (BERMUDA) LIMITED

Plaintiff

and

SINCLAIR-DWYER AND COMPANY, INC.

Defendant

## STATEMENT OF DEFENCE

1. Save as expressly admitted herein, the Defendant denies each and every allegation contained in the Statement of Claim as if the same were set forth and traversed seriatim. In this statement of defence, the Defendant will respond to each paragraph of the Statement of Claim and then set out its positive defences.

2. The Defendant has insufficient information upon which to admit or deny paragraph 1 of the Statement of Claim.

3. Similarly, the Defendant has insufficient information upon which to admit or deny paragraph 2 of the statement of claim.

4. Save that the Defendant is a California corporation with its principal place of business in San Leandro, California, paragraph 3 of the Statement of Claim is admitted.

5. In response to paragraph 4, in or about January 1999 the Defendant accepted a workers compensation insurance proposal submitted to it by Commonwealth Risk Management (a subsidiary, agent and/or alter ego of the Plaintiff) on Plaintiff's behalf. This provided a "fully insured" program whereby the Defendant would sell insurance provided by Legion Insurance Company and Villanova Insurance Company (each of which is also a

1

subsidiary, agent and/or alter ego of the Plaintiff). This was to include a "full re-insurance" provided by the Plaintiff in a "rent-a-captive" program. Except as so admitted, the contents of paragraph 4 are denied.

6. The Defendant denies the contents of paragraph 5 in its totality in that it misrepresents the arrangement amongst the parties both by material omission and by misstatement. As to the particular subparagraphs:

   (a) Admitted

   (b) Denied

   (c) Denied

   (d) Denied. The California Alliance of Human Services Organizations was to be the signatory of K33. The series D37, E37 and F37 Shareholder Agreements were neither accepted nor executed by the Defendant, either in actuality or by performance.

7. As to paragraph 6, with the exception of the first and second sentences which are denied and further a denial that the Defendant's actions were taken pursuant to clause 3(B) of the Shareholder Agreements which were neither accepted nor executed by the Defendant, the contents of this paragraph are otherwise admitted.

8. The Defendant has insufficient information upon which to admit or deny paragraphs 7, 8 and 9 of the Statement of Claim.

9. With respect to paragraph 10, it is admitted only that the Plaintiff sent such a letter and that the Defendant did not respond.

10. The contents of paragraph 11 are denied in their entirety.

11. The contents of paragraphs 12 and 13 are denied.

## AFFIRMATIVE DEFENCES

12. Throughout its dealings with the Defendant, the Plaintiff was the alter ego and/or an agency principal of Mutual Indemnity, Commonwealth Risk Management, Legion Insurance Company and Villanova Insurance Company. The Plaintiff participated in the

arrangement and negotiation of its relationship with the Defendant exclusively through these alter egos and/or agents, who had both ostensible and actual authority to speak for the Plaintiff. Plaintiff has liquidated the collateral, at an expense to the Defendant in excess of $1 million.

13. To the extent Defendant would otherwise be bound by any agreement with Plaintiff, such agreement is unenforceable in that Defendant was fraudulently induced to enter into business arrangements with Plaintiff. Among other things:

   (a) From the outset of its arrangements with Defendant, and consistently thereafter, Plaintiff and its affiliates, agents and/or alter egos consistently and repeatedly told Defendant, that its exposure, if any, under the "rent-a-captive" program would be strictly limited to the "gap" between premiums paid and the first layer of reinsurance purchased; that "full reinsurance" would be purchased to cover all losses under the program, so that there would be no excess liability other than this "gap"; that funding of the "gap" obligation would be handled exclusively by Defendant's returning part of its commission payments to Plaintiff; and that therefore Defendant would have no liability whatsoever for any losses the program might sustain.

   (b) Plaintiff consistently made these same representations to other insurance brokers that entered into substantially identical programs with it.

   (c) Each of these representations was material to Defendant, which absolutely would not have entered into any business arrangement that might have ruinous potential for its small family-owned insurance agency.

   (d) Defendant reasonably relied upon each of these representations, entered into a business relationship with Plaintiff and fully funded all its commitments to collateralize any potential "gap" obligation by returning part of its commissions to Plaintiff.

   (e) In fact, Plaintiff evidently had no intention of abiding by these representations when they were made. Instead, Plaintiff apparently did not procure full reinsurance for all risks, and planned from the outset to impose any losses upon Defendant and others to whom it had made such representations.

(f) Defendant will be grievously injured if Plaintiff is allowed to benefit from its own intentional or at least reckless misrepresentations.

14. To the extent that the Plaintiff is alleging that the Defendant has indemnification liability exceeding the "gap", it is in breach of the representations of its agents and/or alter egos.

15. The Plaintiff repeatedly assured the Defendant that the California Alliance of Human Services Organizations – and not the Defendant would be the Shareholder under Series K33. To the extent that the documentation does not so reflect these representations, the Plaintiff is estopped from asserting otherwise.

16. The Series D37, E37 and F37 Shareholder Agreements upon which most of the sums claimed are based were never accepted nor executed by the Defendant, nor adopted by performance. Defendant refused to sign those documents as a direct result of Plaintiff's failure to explicitly include in them the assurances as to limited liability which it had otherwise repeatedly given Defendant as described above. Therefore, whatever business arrangement existed between Plaintiff and Defendant respecting the D37, E37 and F37 series is not controlled by the unsigned Shareholder Agreements and Defendant has no obligations to the Plaintiff under them.

17. Accordingly, the Plaintiff is estopped by its own conduct from asserting these claims against the Defendant and the Plaintiff is in breach of the representations as noted above. If necessary, the Defendant seeks a rescission of the said agreements to the extent that they do not reflect the representations which were made to the Defendant by the Plaintiff.

18. The Defendant seeks a dismissal of this action with costs.

Dated this 7th day of April 2006.

*Wakefield Quin*
Wakefield Quin
Attorneys for the Defendant

To: Conyers Dill and Pearman
Clarendon House, 2 Church Street
Hamilton   HM 11
Attorneys for the Plaintiff

IN THE SUPREME COURT OF BERMUDA
CIVIL JURISDICTION
2006 : No. 33

BETWEEN:

MUTUAL HOLDINGS (BERMUDA) LIMITED

Plaintiff

and

SINCLAIR-DWYER AND COMPANY, INC.

Defendant

---

## STATEMENT OF DEFENCE
---

SUPREME COURT BERMUDA
06 APR 10  AM 10:56

 

**Wakefield Quin**
Chancery Hall
52 Reid Street
Hamilton HM12
Bermuda

Attorneys for the Defendant
JP/pi/4305-001